UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENDA WERNIKOFF, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 12-12054 |
| LOLETHA GRAHAM-SMITH, MARGARETTA COLLINS, VANESSA ELLIS, EDWARD FLEMMING, FRANK CHIOLA, JOHN DOES 1-5, in their individual capacities, and the CITY OF BOSTON, | ) |
| Defendants. | ) |

**COMPLAINT**

**INTRODUCTION**

1. This is a civil rights action for the unlawful arrest, false imprisonment, strip search, and malicious prosecution of Ms. Brenda Wernikoff. On May 19, 2010, Boston police officer Loletha Graham-Smith arrested Ms. Wernikoff, a male-to-female transgender woman, because she was using the women's bathroom at the Woods Mullen Shelter, a homeless shelter run by the Boston Public Health Commission ("BPHC"). Ms. Wernikoff's use of the bathroom based on her gender identity was entirely appropriate, as both BPHC policy and a Boston city ordinance make clear. Nevertheless, Defendant Graham-Smith—at the behest of Defendants Margaretta Collins and Vanessa Ellis, BPHC staff members—told Ms. Wernikoff that she had to leave the bathroom and arrested her for trespass for asserting her right to use the bathroom.

2. Defendant Graham-Smith took Ms. Wernikoff to the Area D-4 police station, where male Defendant police officers including Edward Flemming, Frank Chiola, and one or more John Does forced her to remove her shirt and bra, exposing her breasts. The male Defendant police

officers then ordered Ms. Wernikoff to jump up and down, causing her breasts to jiggle. The officers laughed at Ms. Wernikoff. She felt humiliated and degraded.

**JURISDICTION**

3.  This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. § 1331 and § 1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over state law claims.

**PARTIES**

4.  Plaintiff Brenda Wernikoff is a resident of Massachusetts.

5.  Defendant Loletha Graham-Smith ("Graham-Smith") was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. Her actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and of the City of Boston. She is sued in her individual capacity.

6.  Defendant Margaretta Collins ("Collins") was at all times relevant to this complaint an employee of Woods Mullen Shelter and of Boston Public Health Commission, an agency of the Commonwealth of Massachusetts. Her actions were taken under color of the laws of the Commonwealth of Massachusetts. She is sued in her individual capacity.

7.  Defendant Vanessa Ellis ("Ellis") was at all times relevant to this complaint an employee of Woods Mullen Shelter and of Boston Public Health Commission, an agency of the Commonwealth of Massachusetts. Her actions were taken under color of the laws of the Commonwealth of Massachusetts. She is sued in her individual capacity.

8.  Defendant Edward Flemming ("Flemming") was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and of the City of Boston. He is sued in his individual capacity.

9. Defendant Frank Chiola ("Chiola") was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and of the City of Boston. He is sued in his individual capacity.

10. John Does 1-5 represent those police officers who were present at the booking and search of Ms. Wernikoff whose true names are not presently known to her. They were at all times relevant to this complaint duly appointed police officers of the Boston Police Department.

11. Defendant City of Boston is a duly organized city in the Commonwealth of Massachusetts.

**FACTS**

12. Ms. Wernikoff is female. She is a transgender woman. Although she was assigned male gender at birth, she has identified as a woman for many years. On September 30, 2009, she obtained a court order legally changing her name to Brenda R. Wernikoff and her gender to female.

13. Ms. Wernikoff has a valid Massachusetts commercial driver's license that states her name is Brenda Wernikoff and her sex is female. This license was renewed on May 11, 2010.

14. Woods Mullen Shelter is a homeless shelter run by BPHC.

15. Before May 19, 2010, Ms. Wernikoff had stayed at Woods Mullen Shelter on occasion for about a year. She had always stayed in the women's dormitory and had used the women's bathroom without incident.

16. Woods Mullen Shelter issues identification cards to all guests. Ms. Wernikoff has an identification card issued in the name "Brenda Wernikoff." The guests scan their identification cards as they enter the shelter.

17. On information and belief, staff at Woods Mullen Shelter use the identification cards to check the "bar list" to ensure that guests are not barred from staying at the shelter.

18. Ms. Wernikoff had never presented a security issue at Woods Mullen or any other shelter run by BPHC, nor had she been barred from any shelter run by BPHC.

19. On the morning of May 19, 2010, Defendants Collins and Ellis were working at Woods Mullen Shelter. As employees of Woods Mullen Shelter, they were required to follow BPHC Homeless Services Policies and Procedures, including the BPHC Protocol for Serving Transgender Guests (revised July 2008).

20. That protocol states, "For the purpose of accommodations, the gender identity of a guest should be determined through conversation, rather than through a physical exam." The protocol states that transgender women should use the women's restroom.

21. On the morning of May 19, 2010, Defendant Graham-Smith was working a police detail at Woods Mullen Shelter. She had worked details at Woods Mullen Shelter on many occasions. As a regular detail officer at Woods Mullen Shelter, she knew or should have known the BPHC protocols regarding the shelter, including the BPHC Protocol for Serving Transgender Guests.

22. Defendant Graham-Smith, as a member of the Boston Police Department, is charged with knowing and following the statutes and ordinances of the Commonwealth of Massachusetts and the City of Boston.

23. The City of Boston's human rights law prohibits discrimination on the basis of sex, gender identity, and gender expression. Section 12-9.7 of the municipal code prohibits such discrimination with regard to public accommodations and services. The ordinance states that "it shall be an unlawful and discriminatory practice to prevent or prohibit the use of restrooms, baths, showers, dressing rooms, or other private accommodations based on the gender identity publicly and exclusively expressed or asserted by the person seeking to use such restrooms…." City of Boston Code ch. 12, § 9.7.

24. On the evening of May 18, 2010, Ms. Wernikoff was admitted to the Woods Mullen Shelter without incident. She was housed in the women's dormitory, as she was during previous visits.

25. At around 6:30 a.m. on May 19, 2010, Ms. Wernikoff woke up and went to the bathroom. She used the women's bathroom, which she had used many times before without incident.

26.     Ms. Wernikoff uses women's bathrooms because she is a woman. She used the women's bathroom at Woods Mullen Shelter in accordance with the policies of the shelter and the laws of the City of Boston.

27.     Defendant Collins approached Defendant Graham-Smith and told her that there was a white male using the woman's bathroom and that "he would have to leave the shelter."

28.     Defendants Ellis and Collins falsely told Defendant Graham-Smith that if a "male" entered the shelter identifying as female, "he" could stay in the women's unit but could not use the women's bathroom when other women were in the bathroom.

29.     Defendants Collins and Ellis asked Defendant Graham-Smith to remove Ms. Wernikoff from the shelter because she was using the women's bathroom when other women were in the bathroom.

30.     Defendants Collins and Ellis incorrectly used male pronouns to refer to Ms. Wernikoff.

31.     Defendant Graham-Smith entered the women's bathroom. Ms. Wernikoff was in a bathroom stall. When Ms. Wernikoff emerged from her stall, Defendant Graham-Smith told Ms. Wernikoff that she had to leave the bathroom.

32.     Defendant Graham-Smith called Ms. Wernikoff "Sir." Ms. Wernikoff asked Defendant Graham-Smith not to call her "Sir."

33.     Defendant Graham-Smith and Ms. Wernikoff walked out of the bathroom.

34.     Ms. Wernikoff's repeatedly asked to be called "Brenda." Although she clearly expressed a female gender identity Defendant Graham-Smith referred to Ms. Wernikoff as "Sir" numerous times. Each time, Ms. Wernikoff pointed her finger at Defendant Graham-Smith and said, "Don't call me 'Sir.'" Ms. Wernikoff did not touch Defendant Graham-Smith.

35.     Ms. Wernikoff was upset and angry that Defendants Ellis, Collins, and Graham-Smith refused to treat her with respect or recognize her gender.

36. Ms. Wernikoff was carrying her purse which had her driver's license and other identification.

37. Defendant Graham-Smith never asked to see Ms. Wernikoff's identification.

38. Defendant Graham-Smith called for a police wagon. An officer placed Ms. Wernikoff in handcuffs.

39. Defendants Collins and Ellis violated BPHC protocol by disregarding Ms. Wernikoff's gender identity and discriminating against her by preventing her from using the women's bathroom.

40. Defendants Collins, Ellis, and Graham-Smith violated City of Boston Code ch. 12, § 9.7 by preventing Ms. Wernikoff from using the restroom on the basis of her sex, gender identity, and/or gender expression.

41. A police wagon took Ms. Wernikoff to the Area D-4 police station. Defendant police officers Frank Chiola and Edward Flemming took custody of Ms. Wernikoff at the police station. Defendants John Does 1-5 were present during the booking.

42. Defendant Flemming is listed on the police report as the officer who booked Ms. Wernikoff.

43. None of the Defendants ever asked to view Ms. Wernikoff's identification. Her identification was in her purse, which the male Defendant officers kept in the booking area.

44. Defendant Graham-Smith charged Ms. Wernikoff with criminal trespass. She also charged Ms. Wernikoff with disorderly conduct for her actions protesting her removal from the bathroom. There was no probable cause to arrest or prosecute Ms. Wernikoff for either of these charges, or for any other charge.

45. Defendant Chiola is listed on the police report as the officer who searched Ms. Wernikoff.

46. During the booking procedure, male Defendant officers instructed Ms. Wernikoff to remove her bra. On information and belief, these officers included Defendants Flemming, Chiola, and one or more of the Doe Defendants.

47. The officers did not offer Ms. Wernikoff a private area in which she could remove her bra.

48. Ms. Wernikoff had to take off her shirt to remove her bra. Ms. Wernikoff was then naked from the waist up.

49. There was no proper police purpose for ordering Ms. Wernikoff to remove her bra.

50. The officers ordered Ms. Wernikoff to jump up and down while she was naked from the waist up, causing her breasts to jiggle. The officers laughed at Ms. Wernikoff.

51. There was no proper police purpose for ordering Ms. Wernikoff to jump up and down while she was topless. The officers ordered Ms. Wernikoff to perform this act for their amusement and to degrade Ms. Wernikoff.

52. Ms. Wernikoff was extremely upset by the Defendant officers' orders. She felt that she had no choice but to comply.

53. The officers allowed Ms. Wernikoff to put her shirt back on without her bra. They placed Ms. Wernikoff into a single cell.

54. Ms. Wernikoff stayed at the Area D-4 police station for a short time. Officers transported her to Boston Municipal Court in Roxbury for arraignment later that morning. Ms. Wernikoff was released on personal recognizance.

55. The criminal charges against Ms. Wernikoff were dismissed at the request of the Commonwealth on June 23, 2010, at her second court appearance.

56. As a result of this incident, Ms. Wernikoff was barred from Woods Mullen Shelter, which had been a safe place for her to stay. She has not stayed at Woods Mullen Shelter since May 19, 2010.

57. As a result of Defendants' conduct, Ms. Wernikoff suffered mental anguish, embarrassment, humiliation, and degradation. She felt the sting of discrimination. Defendant Graham-Smith arrested Ms. Wernikoff for simply using the bathroom. Defendants Collins, Ellis, and Graham-Smith turned a universal human activity—going to the bathroom in the morning—into a traumatic experience. At the station, Ms. Wernikoff was scared and humiliated when male Defendant officers forced her to remove her top and jump up and down. She felt degraded by male police officers gawking at her breasts and laughing.

58. Ms. Wernikoff is now fearful of BPHC employees and of Boston police officers. Her fear prevents her from receiving services BPHC provides to homeless people. Her fear prevents her from feeling safe in the presence of police officers.

59. Ms. Wernikoff often faces disrespect and discrimination because she is a transgender woman. City of Boston Code ch. 12, § 9.7 and the BPHC Protocol for Serving Transgender Guests are designed to protect the basic human rights of transgender people.

60. Boston police officers and BPHC employees are supposed to enforce laws and policies that protect transgender people from discrimination. Instead of protecting Ms. Wernikoff, the individual Defendants subjected her to treatment that was discriminatory, disrespectful, demeaning, and cruel.

**Policies, Practices, and Customs of the City of Boston**

61. The Defendant City of Boston failed to properly train, supervise, and discipline its police officers regarding proper treatment of transgender and gender-nonconforming people.

62. The Boston Police Department has no written policies regarding gender identity or gender identity expression. The City of Boston failed to provide its police officers with guidance on how to respectfully and reasonably interact with, stop, arrest, search, and/or detain transgender or gender-nonconforming people.

63. The City failed to train its police officers to follow the City of Boston Code ch. 12, § 9.7. The City failed to instruct and require Boston Police officers to treat transgender people properly based on their gender identity. Nor did the City instruct its police officers that people in

8

Boston have the right to use restrooms, baths, showers, dressing rooms, and other public accommodations based on the gender identity that they publically and exclusively express.

64. On information and belief, the City failed to train its police officers on proper procedures for searching transgender people or on the privacy rights of transgender people.

65. Boston police officers regularly interact with transgender people during the course of their police duties. Without proper policies, training, and supervision, it was inevitable that Boston police officers, including the individual Defendants, would fail to respect the rights of transgender people.

66. The policies, practices, and customs of the Boston Police Department caused Defendant Graham-Smith to arrest Brenda Wernikoff without cause because she was exercising her lawful right to use a bathroom based on her gender identity.

67. The policies, practices, and customs of the Boston Police Department caused Defendants Chiola, Flemming, and John Does 1-5 to violate Ms. Wernikoff's right to be free from an unreasonable search and seizure and to treat her in a demeaning, abusive, hostile, and discriminatory manner in violation of the U.S. Constitution, Massachusetts law, and the City of Boston Code.

**COUNT I**     **42 U.S.C. § 1983 Claim Against Defendant Loletha Graham-Smith: False Arrest**

68. The above paragraphs are incorporated by reference.

69. Defendant Graham-Smith, acting under of color of law, arrested Plaintiff without probable cause, in violation of the Fourth and Fourteenth Amendments to the Constitution.

70. Defendant Graham-Smith acted with reckless disregard for Plaintiff's clearly established constitutional rights.

71. As a direct and proximate result of Defendant Graham-Smith's actions, Plaintiff suffered the damages described above.

**COUNT II**     <u>42 U.S.C. § 1983 Claim Against Defendants Frank Chiola, Edward Flemming, and John Does 1-5: Illegal Strip Search</u>

72. The above paragraphs are incorporated by reference.

73. Defendants Chiola, Flemming, and Does 1-5, acting under color of law, conducted an illegal strip search of Plaintiff without probable cause or reasonable suspicion, and conducted a strip search in an unreasonable manner, in violation of the Fourth and Fourteenth Amendments to the Constitution.

74. Defendants acted in reckless disregard of Plaintiff's clearly established constitutional rights.

75. As a direct and proximate result of these actions, Plaintiff suffered the injuries described above.

**COUNT III**    <u>Tort Claim Against Defendants Loletha Graham-Smith, Edward Flemming, and Frank Chiola: False Imprisonment</u>

76. The above paragraphs are incorporated by reference.

77. Defendants Graham-Smith, Flemming, Chiola, and Does 1-5 imposed an unlawful restraint on Plaintiff's freedom and movement without probable cause by threat of force and humiliation.

78. The acts of said Defendants constituted the false imprisonment of Plaintiff in violation of the laws of Massachusetts and the City of Boston.

79. As a direct and proximate result of these actions and deprivations, Plaintiff suffered the injuries described above.

**COUNT IV**    <u>Tort Claim Against Defendants Margaretta Collins, Vanessa Ellis, and Loletha Graham-Smith: Malicious Prosecution</u>

80. The above paragraphs are incorporated by reference.

81. Defendants Collins, Ellis, and Graham-Smith caused criminal charges to be brought against Ms. Wernikoff without probable cause and with malice. The charges terminated in Ms. Wernikoff's favor.

82.     As a direct and proximate result of Defendants' actions, Ms. Wernikoff suffered the damages described above.

**COUNT V     Tort Claim Against All Individual Defendants: Intentional Infliction of Emotional Distress**

83.     The above paragraphs are incorporated by reference.

84.     Defendants intentionally performed the actions described above to humiliate, demean, degrade, and abuse Plaintiff based on her gender identity.

85.     Defendants' conduct was extreme and outrageous and likely to result in emotional distress to Plaintiff.

86.     Defendants' conduct caused Plaintiff to suffer severe emotional distress.

87.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered the damages described above.

**COUNT VI    42 U.S.C. § 1983 Claim Against Defendant City of Boston**

88.     The above paragraphs are incorporated by reference.

89.     The actions of Defendants Graham-Smith, Flemming, Chiola, and one or more John Does were done pursuant to the informal policies, practices or customs of the City of Boston.

90.     The aforementioned policies, practices and/or customs of the City of Boston proximately caused injury to the Plaintiff in this case. Police officers, including Defendants Graham-Smith, Flemming, Chiola and Does, had reason to believe that they would not be subject to sanction or discipline for their actions.

91.     The policies, practices and customs of the City of Boston caused Defendants Graham-Smith, Flemming, Chiola, and one or more Does to commit the aforesaid acts against Plaintiff. These policies, practices and customs were the moving force behind and a direct and proximate cause of the unconstitutional acts committed by Defendants and the injuries sustained by Plaintiff.

**COUNT VII**  **Tort Claim Against Defendants Defendants Frank Chiola, Edward Flemming, and John Does 1-5: Massachusetts Privacy Act, M.G.L. ch. 214 § 1B**

92. The above paragraphs are incorporated by reference.

93. Defendants Chiola, Fleming and Does, violated Ms. Wernikoff's privacy rights under the Massachusetts Privacy Act, M.G.L. ch. 214 § 1B, by unreasonably, substantially, and seriously interfering with her privacy.

94. As a direct and proximate result of Defendants' actions, Plaintiff suffered the damages described above.

**WHEREFORE**, Plaintiff requests that this Court:

1. Award compensatory damages;

2. Award punitive damages against the individual Defendants;

3. Award the cost of this action including reasonable attorney's fees; and

4. Award such other further relief as this court deems appropriate and necessary.

**JURY DEMAND**

A trial by jury is hereby demanded.

                              RESPECTFULLY SUBMITTED,

/s/Howard Friedman
Howard Friedman, BBO #180080
**Law Offices of Howard Friedman, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114-2022
617-742-4100
hfriedman@civil-rights-law.com

/s/ David Milton
David Milton, BBO #668908
**Law Offices of Howard Friedman, P.C.**
90 Canal Street, 5th Floor
Boston, MA 02114-2022
617-742-4100
dmilton@civil-rights-law.com

Dated: November 5, 2012

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above document was served upon the attorney of record for each party via ECF.

Date: November 5, 2012   /s/ Howard Friedman
                        Howard Friedman